UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONALD CALVIN,

    Plaintiff,

    v.

WHATCOM COUNTY, *et al.*,

    Defendants.

NO. C07-273RSL

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on "Defendants' Motion for Summary Judgment," Dkt. #31.[1] Plaintiff, acting *pro se*, has filed a lawsuit alleging numerous civil rights violations arising out of an arrest, detention and prosecution of plaintiff. For the reasons set forth below,

---

[1] The motion was filed on behalf of defendants Whatcom County, David McEachran, Royce Buckingham, Dale Brandland and Wendy Jones. Defendant Brandland has been dismissed upon plaintiff's motion. Dkt. #69 at 2. After plaintiff amended his complaint to add previously unnamed defendants, defense counsel filed a notice of appearance indicating that he also represents defendants Zender, Furdyk and King, Dkt. #103, however the claims against these defendants are not included in the motion for summary judgment. Plaintiff has indicated that Mr. Koch, Mr. Beld, and Mr. Richie, named for the first time in the amended complaint, have not yet been served. Dkt. ##101, 106. The Court granted plaintiff's motion to amend the complaint, and the amended complaint was filed, on April 28, 2009, Dkt. ##96, 102. Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff– must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Plaintiff is hereby ordered to show cause why the complaint against these remaining three defendants should not be dismissed.

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 1

the Court grants defendants' motion for summary judgment.

## II. DISCUSSION

### A. Background

#### 1. Factual Background

Plaintiff's compliant alleges that on or about November 29, 2003, his home was burglarized, First Am. Compl., Dkt. #102 at 5, and when Whatcom County authorities responded to his 911 call for assistance, they detained him instead of the purported burglars, id. at 7. Plaintiff alleges that despite his requests, the Sheriff's deputies refused to lock up his home before taking him to jail, thereby facilitating another burglary in his absence. Id. at 9.

After the incident, plaintiff was transported to Whatcom County Jail. Id. at 10. Plaintiff alleges that during his incarceration, he suffered mistreatment and inferior jail conditions. Id. He alleges, for instance, that he was denied required medical treatment, reading and writing material, and visitation rights with his pastor. Plaintiff was released from jail after thirty-three days, and the charges against him were later dismissed.

#### 2. Procedural Background

Defendants' filed their motion for summary judgment on March 19, 2008. Dkt. #31. On April 28, 2008, the Court granted the parties' joint motion to re-note the motion for summary judgment, extending the due date for plaintiff's response to May 19, 2008. Dkt. #47. Eight days after his response was due, plaintiff filed another uncontested motion for continuance, Dkt. #50, which the Court granted on May 28, 2008, Dkt. #52. Despite plaintiff's assertion that he would "not request further postponements of the hearing upon [defendants'] Motion for Summary Judgment," Dkt. #50 at 4, plaintiff filed a "Motion to Permit Receipt of Tardy Response to Defendant's Motion for Summary Judgement" on June 16, 2008, ten days after his response was due. Dkt. #53. Finally, on July 1, 2008, plaintiff filed his response, Dkt. #56, along with a "Motion for Leave to File Late Response." Dkt. #55.

On October 15, 2008, the Court *sua sponte* continued the motion for summary judgment

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2

to give plaintiff the opportunity to conduct discovery, Dkt. #69, and although the Court stated that plaintiff's amended response was due on December 5, 2008, id. at 2, plaintiff filed a motion to continue on December 8, 2008. Dkt. #79. The Court once again granted plaintiff's motion for a continuance while advising him to avoid further delays. Dkt. #81. After plaintiff moved for appointment of counsel, Dkt. #82, the Court referred the motion to United States Magistrate Judge Brian A. Tsuchida, Dkt. #84, who denied the motion, Dkt. #85. The Court subsequently denied reconsideration of this order, Dkt. #88, and renoted defendants' motion for summary judgment for April 3, 2009, id. at 4. On March 30, 2009, plaintiff filed a motion to amend his complaint, Dkt. #89, which the Court granted, Dkt. #96 at 1, and the Court renoted the summary judgment motion for June 5, 2009, id. at 3.

On June 1, 2009, plaintiff sought a "brief continuance" on the grounds that an important document central to his case would not be available for another week. Dkt. #98. Assuming that this document was in fact central to plaintiff's case, the Court granted the extension, renoting the summary judgment motion for June 19, 2009. Dkt. #100. Plaintiff later wrote a letter to the Court's judicial assistant, which the Court construed as a motion to continue. Dkt. #104. The Court once again granted the extension, warning plaintiff that he "will receive one final opportunity to submit his amended response" to defendants' motion for summary judgment. Dkt. #107 at 2. On August 3, 2009, plaintiff filed yet another motion to continue, Dkt. #109, indicating that he was still awaiting that "important document." Dkt. #109. The court ordered plaintiff to submit his amended response immediately, with or without the document. Dkt. #111.[2]

On September 21, 2009, plaintiff filed a "Motion for Relief from Judgment or Order, and

---

[2] The Court discerned from plaintiff's motion that the document related to defendant Royce Buckingham's reasons for dismissing the criminal case against plaintiff and found that this document was not important enough to the disposition of the case to prolong a decision on defendants' motion for summary judgment. Dkt. #111 at 1.

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3

Motion to Impose Sanctions," Dkt. #113. Attached to this motion is the long-awaited affidavit from plaintiff's former attorney regarding statements allegedly made by defendant Buckingham. Plaintiff indicates in this motion that he has not "commenced *any* discovery process (either depositions or interrogatory)" and that he "await[s] the Court's authorization to commence these important fact-finding processes." Dkt. #113 at 4 n.11; see also id. at 6 n.14 ("These things may be revealed upon discovery; which process has not yet commenced, and will when – and if –, plaintiff obtains the right to commence the discovery process."). Although plaintiff indicates that he "does not ask for any additional continuance," id. at 19, he "begs the Court to withhold decision" on defendants' motion for summary judgment until he submits his amended response, which he expects will be on or about October 2, 2009, id. at 18. As of the date of this Order, the Court has not received an amended response from plaintiff.

**B. Analysis**

    **1. Plaintiff's Motion for Relief from Judgment or Order**

Plaintiff's statement that he is awaiting the Court's authorization to commence discovery completely ignores the procedural history of this case. As outlined above, the Court continued defendants' motion for summary judgment *sua sponte* almost a year ago in order to allow plaintiff to conduct the discovery he needed to support his allegations. See Dkt. #69 at 2 (finding that while plaintiff "could have commenced discovery as soon as [the parties] conducted a Rule 26(f) conference, plaintiff apparently believed that discovery could not take place until scheduled by the Court" and allowing plaintiff an additional two months to submit an amended response upon gathering more evidence); Dkt. #81 at 1 ("On October 15, 2008, the Court continued defendants' motion for summary judgment to allow plaintiff more time to conduct discovery."); Dkt. #88 at 3 ("[E]ven if plaintiff has to conduct multiple depositions in light of his lawsuit against multiple defendants, the legal issues presented in his claims are not unduly complex."); Dkt. #96 at 2 ("Plaintiff would have been better served had he used [his] time to prepare and find evidence in support of his response to defendants' motion."); Dkt. #111 at 2

("Assuming he has conducted additional discovery since the Court first gave him the opportunity to do so nearly ten months ago, plaintiff must submit any evidence and his newly-drafted response by Monday, August 24, 2009."). Additionally, in the Court's "Order Setting Trial Dates & Related Dates," Dkt. #78, it indicated that all discovery was to be completed by June 7, 2009, id. at 1. Plaintiff's belief that he is still awaiting permission to conduct discovery, even if genuine, cannot form the basis for additional delays in this case. As outlined above, plaintiff has been given every conceivable opportunity to gather the evidence he needs and submit his amended response. The Court's docket does not permit any further delay on defendants' motion, filed eighteen months ago. As it has still not received plaintiff's amended response,[3] the Court will rule on defendants' motion for summary judgment based on plaintiff's original response, Dkt. #56.[4]

The Court will, however, consider the affidavit attached to plaintiff's most recent motion in ruling on defendants' motion for summary judgment despite the fact that it was submitted well past the briefing deadline.

**2. Defendants' Motion for Summary Judgment**

Rule 56 provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] After over one year of continuances, the Court cannot afford to rely on plaintiff's assertion that his amended response "would be filed with the Court on October 2, or if of necessity by overnight mail, October 3, 2009." Dkt. #113. Plaintiff indicates that he "ha[s] been promised a completed Response by September 30." Id. It is unclear who has promised plaintiff a response brief, as plaintiff is representing himself in this action and has heretofore submitted all of his pleadings on his own. Regardless, plaintiff has made many promises before indicating that he is just days or weeks away from submitting his amended response, and the Court has obliged. As noted above, plaintiff will receive no more opportunities to delay a ruling on this motion.

[4] See Dkt. # 96 at 3 n.2 ("If plaintiff chooses not to file an amended response, the Court will rule on the motion based on his previous response brief, Dkt. #56, and defendants' previous reply brief, Dkt. #64.")

56©).  The moving party bears the burden "to show initially the absence of a genuine issue concerning any material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970)), and all evidence must be viewed in the light most favorable to the nonmoving party, Hawkins v. United States, 30 F.3d 1077, 1079 (9th Cir. 1994).  Once the moving party makes the required showing, the burden shifts to the nonmoving party to come forward with sufficient evidence to demonstrate that there is a triable issue of fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).  "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The Court addresses the claims against each defendant included in the summary judgment motion in turn.

### a. Royce Buckingham

Plaintiff's complaint alleges that defendant Buckingham, deputy prosecuting attorney for Whatcom County,[5] withheld exculpatory evidence and lied in a sworn affidavit.  First Am. Compl. at 27-28.

"Prosecutors are entitled to *absolute* immunity . . . when they engage in activities 'intimately associated with the judicial phase of the criminal process,'" al-Kidd v. Ashcroft, 2009 WL 2836448, at *6 (9th Cir. Sep. 4, 2009) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)) (emphasis in original), and "done 'in the course of [their] role as an advocate for the State,'" id. (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)) (alteration in original).  "They are entitled only to qualified immunity, however, when they perform investigatory or

---

[5] Plaintiff uses "the generic term Office of Prosecuting Attorney and Prosecuting Authority . . . somewhat interchangably, and to signify that both Mr. Buckingham and Mr. Richie, who applied for a determination of probable cause to detain plaintiff" are equally liable.  First Am. Compl. at 27 n.41.  As indicated above, Mr. Richie has not been served in this case, see supra n.1.  In the event that Mr. Richie is not dismissed as a defendant, plaintiff will bear the burden to demonstrate why the same reasoning applied in the present Order regarding defendant Buckingham should not also apply to the claims against Mr. Richie.

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 6

administrative functions, or are essentially functioning as police officers or detectives." Id. "[A]bsolute prosecutorial immunity will be given 'only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct.'" Id. at *7 (quoting Burns v. Reed, 500 U.S. 478, 494 (1991)).

Plaintiff first claims that defendant Buckingham made false statements in his Affidavit of Probable Cause Determination, Dkt. #56, Ex. F. In Kalina v. Fletcher, 522 U.S. 118, 129-30 (1997), the Supreme Court held that absolute immunity does not extend to a prosecutor's sworn statements that form the basis for a finding of probable cause. "Testifying about facts is the function of the witness, not of the lawyer." Id. at 130. Therefore, defendant Buckingham is entitled to only qualified immunity in relation to his sworn statements. "[T]o survive a defendant officer's motion for summary judgment on the ground of qualified immunity, . . . the plaintiff must 1) make a 'substantial showing' of deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the challenged action would not have occurred." Liston v. County of Riverside, 120 F.3d 965, 973 (9th Cir. 1997) (citing Hervey v. Estes, 65 F.3d 784, 788-89 (9th Cir. 1995)).

The Court finds that defendant Buckingham did not violate plaintiff's constitutional rights, as there is no evidence that defendant Buckingham made any materially false statements in his affidavit. Defendant Buckingham stated that, when officers arrived at the scene, plaintiff had struck Susan Jones on the head with a hatchet and she was "bleeding profusely." Dkt. #56, Ex. F. at 1. Plaintiff complains that Ms. Jones was only "bleeding moderately" according to the police report, Dkt. #56, Ex. D at 2. Defendant Buckingham's statement that Ms. Jones was "bleeding profusely" hardly demonstrates "deliberate falsehood or reckless disregard for the truth," Liston, 120 F.3d at 973, nor would plaintiff's preferred alteration have had any effect on the magistrate's finding of probable cause. Defendant Buckingham also stated that plaintiff "admitted that he had struck both [Albert] Kansier and Jones with the hatchet, but claimed that he was scared because he thought they were breaking into his house." Dkt. #56, Ex. F at 1.

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7

1  Plaintiff's claim that he only admitted to striking Ms. Jones and not Mr. Kansier does not
2  demonstrate that these statements were materially false. The police report states that plaintiff
3  "struck Albert on the right hip with the hatchet." Dkt. #56, Ex. D at 1. Whether plaintiff
4  admitted striking both of them or whether the facts simply showed that he struck both of them is
5  not determinative of probable cause.[6] Plaintiff further alleges that defendant Buckingham misled
6  the magistrate by stating that Ms. Jones and Mr. Kansier "were not breaking into his house."
7  Dkt. #56, Ex. F at 1-2. But defendant Buckingham qualified this statement by indicating that
8  this information was "according to Jones and Kansier." Id. at 2. He did not indicate that the
9  statements made by Ms. Jones and Mr. Kansier were correct; in fact, in the previous sentence, he
10 articulated plaintiff's side of the story, see id. at 1 ("[H]e was scared because he thought they
11 were breaking into his house."). Plaintiff also claims that defendant Buckingham misled the
12 Court by saying plaintiff attacked Ms. Jones and Mr. Kansier "outside of his house." Dkt. #56,
13 Ex. F at 2. But plaintiff concedes "[i]t is true that the altercation carried outside" after plaintiff
14 pursued Ms. Jones and Mr. Kansier. Dkt. #56 at 27. Plaintiff further alleges that defendant
15 Buckingham concealed the fact that both Ms. Jones and Mr. Kansier had criminal records. But
16 this information is not relevant to a determination of probable cause that plaintiff assaulted them.
17     In sum, the heart of plaintiff's complaint seems to be that defendant Buckingham did not
18 present the facts from plaintiff's perspective. The facts are clear from the police report: plaintiff
19 hit Ms. Jones and Mr. Kansier with a hatchet, Dkt. #56, Ex. D at 1, Ms. Jones was bleeding as a
20 result, id. at 1-2, the attacks took place outside of plaintiff's house, id. at 1, plaintiff believed Ms.
21 Jones and Mr. Kansier were burglarizing his house, id. at 2, while Ms. Jones and Mr. Kansier
22 stated that they were at plaintiff's residence to pick up Ms. Jones's dog, id. at 1. Defendant
23 Buckingham's affidavit comports with these facts.

---

[6] Notably, in the police report attached as an exhibit to plaintiff's response, the portion regarding the police officer's interview with plaintiff is blacked out. Dkt. #56, Ex. D at 2.

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 8

Plaintiff next claims that defendant Buckingham made false statements at a bail review and status hearing on December 23, 2003. In addition, plaintiff claims he withheld a recording of plaintiff's 911 call when he believed Ms. Jones and Mr. Kansier were burglarizing his home.[7] But "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley, 509 U.S. at 273. The Supreme Court has time and again "confirmed the importance to the judicial process of protecting the prosecutor when serving as an advocate in judicial proceedings." Kalina, 522 U.S. at 125. Because defendant Buckingham is protected by absolute prosecutorial immunity, plaintiff's claims against him cannot stand with regard to his statements at judicial proceedings.[8]

---

[7] It is unclear when plaintiff asserts defendant Buckingham withheld this recording, whether at a December 2, 2003 hearing which plaintiff did not attend, at the December 23, 2003 hearing, or in the affidavit of probable cause. To the extent plaintiff claims that defendant Buckingham had exclusive control of the 911 recording at the December 23, 2003 hearing, his own evidence refutes his claim. The transcript of that proceeding reveals that Mr. Hunter, plaintiff's counsel at the time, stated, "I have that CD from the 911 people here and I'm going to ask the court to listen to it." Dkt. #113, Ex. D at 1. Notably, the Deputy Director of the What-Comm Communications Center submitted a declaration indicating that What-Comm has "complete and exclusive control of all 911 call recordings" but that they are "routinely released to citizens upon request through the public disclosure process" and that free copies are available to the Prosecutor's office upon request. Dkt. #32 ¶¶ 4-5. Plaintiff claims that the 911 recording reveals the panic and fear in his voice, indicating that believed he was being burglarized. Indeed, the police report suggests that this belief was not reasonable, at least as to Ms. Jones. See Dkt. #56, Ex. D at 2 (noting that plaintiff "hadn't slept in a couple of days because he was fearful of people burglarizing his home" and that plaintiff was taking care of Ms. Jones's dog while she was in jail). Regardless, assuming defendant Buckingham had sole access to the 911 recording when filing for a probable cause determination, the Court finds that it would not have affected the magistrate's finding of probable cause. That plaintiff may have had a self defense argument that when he struck two unarmed people with a deadly weapon he reasonably believed they were burglarizing his house is not enough to undo a finding of probable cause.

[8] Contrary to plaintiff's belief, Dkt. #56 at 21, the Court cannot "lift" the "cloak" of absolute immunity. Absolute immunity confers a "complete exemption from civil liability." Black's Law Dictionary (8th ed. 2004). "In contrast to qualified immunity, absolute immunity does not require the official to have acted reasonably or in accordance with clearly established law." Butler v. Elle, 281 F.3d 1014, 1021 (9th Cir. 2002). No matter how nefariously plaintiff believes defendant Buckingham acted,

1    Finally, plaintiff claims that defendant Buckingham made false statements in his sworn
2    affidavit in support of his motion to dismiss, Dkt. #56, Ex. I.  On February 13, 2004, defendant
3    Buckingham moved to dismiss the criminal case against plaintiff.  As part of his "Motion and
4    Affidavit for Order of Dismissal," id., defendant Buckingham stated that "[t]he victim cannot be
5    located at this time," id. at 2.  Plaintiff contends that this statement is false, as Mr. Kansier (the
6    victim in question) was available, and that defendant's purported reason for dismissing the case
7    is insincere as he was primarily concerned with the assault against Ms. Jones, not Ms. Kansier.
8    But as "it is well established that a prosecutor has absolute immunity for the decision to
9    prosecute a particular case, and for the decision *not to prosecute* a particular case, Botello v.
10   Gammick, 413 F.3d 971, 976 (9th Cir. 2005) (citations omitted) (emphasis in original), the Court
11   is in no position to analyze the prosecutor's motives for dismissing the case.[9]

12   As the evidence before the Court indicates that defendant Buckingham is not liable under
13   § 1983, plaintiff's claims against defendant Buckingham are dismissed with prejudice.

14   **b. Wendy Jones**

15   Plaintiff alleges that Wendy Jones, Chief of Corrections for Whatcom County, showed
16   "callous indifference to serious health conditions, and severe disabilities affecting plaintiff."
17   First Am. Compl. at 25.  Plaintiff asserts that defendant Jones failed to adequately supervise and
18   punish jailhouse employees for depriving plaintiff of "necessary medical treatments, common

---

the Court has no power to examine the truth of plaintiff's allegations regarding defendant's conduct at judicial proceedings.

[9] In fact, plaintiff's greatest concern seems to be that, by dismissing the criminal case against him, defendant Buckingham "defrauded and deprived plaintiff of his right to a trial on this matter," Dkt. #113 at 16; see also Dkt. #56 at 25 (dismissal of charges is "perhaps to plaintiff's greatest injury."). Plaintiff apparently wanted to be prosecuted for the assault in the hopes that a jury would acquit him and he could obtain reimbursement for his "time, legal fees incurred, and other expenses involved in his [] defense" in accordance with RCW 9A.16.110.  Whether the dismissal of criminal charges against plaintiff could be considered an injury under § 1983 is dubious.  Plaintiff has no right to be criminally prosecuted in order to vindicate himself before a jury of his peers.

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10

1 dignities, showers, living space, warmth" and for their "manifold other abuses."

2 "Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir.2005) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)). In a section 1983 claim, "a supervisor is liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them.'" Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1182 (9th Cir.2007) (quoting Taylor, 880 F.2d at 1045) (alteration in original). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Id. at 1183 (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978)).

As Chief of Corrections for Whatcom County, defendant Jones submitted a declaration with attached exhibits reflecting her review of jail records relating to plaintiff's allegations of mistreatment. Dkt. #33. Defendant Jones concludes from her review of these records that "Plaintiff's claims of mistreatment are unsubstantiated and, in some instances, simply false." Id. ¶ 4. In his response brief, plaintiff takes issue with many of defendant Jones's statements and with the documents she submits. Dkt. #56 at 45-50. However, while he disputes her analysis of the jail records, plaintiff provides no evidence that defendant Jones knew or should have known of the alleged mistreatment plaintiff received during his incarceration or that she demonstrated reckless indifference to the alleged violation of plaintiff's rights at the hands of others.[10] In fact,

---

[10] Indeed, the evidence plaintiff does put forth seems to establish that defendant Jones had no personal knowledge of any of the incidents alleged. See Affidavit of David B. Hunter, Dkt. #56 at 97 ("[I]t appears she is drawing a legal conclusion, rather than offering matters of which she has personal

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 11

plaintiff suggests that the issue of defendant Jones's liability for "failing to properly supervise her inferior officers" is "prematurely brought for summary judgment," id. at 45, and that "discovery will show – we believe – a causal relationship between defendant Jones and inferior officers," id. at 50. Thus, plaintiff concedes that he lacks the evidentiary foundation to support his claim against defendant Jones for supervisory liability. As the Court indicated above, plaintiff has been afforded ample time to conduct the discovery he needed to support his claims. As he has produced no evidence of the "requisite causal connection," Preschooler II, 479 F.3d at 1183, between defendant Jones and the alleged actions of her subordinates, plaintiff's § 1983 claim against her is dismissed with prejudice.

### c. David McEachran

Plaintiff's amended complaint does not name Mr. McEachran as a defendant in this case, First Am. Compl. at 3-4, even though his original complaint alleged that Mr. McEachran failed to supervise his deputies, thereby violating plaintiff's due process and Eighth Amendment rights, Compl., Dkt. #4 at 17. Even if Mr. McEachran were included as a defendant, plaintiff's § 1983 claims against him would fail for failure to provide any evidence of supervisory liability. While plaintiff is "certain" that defendant Buckingham would not have violated his civil rights "unless Mr. McEachran, his superior, so condoned or encouraged such corrupt activities," Dkt. #56 at 19, he admits that he has no evidence of this, id.; see also id. at 20 ("The case against defendant Mr. McEachran . . . is perhaps incomplete."). Once again, the time for discovery has come and gone.

Plaintiff's § 1983 claims against defendant McEachran are dismissed with prejudice.

### d. Whatcom County

Defendant alleges that Whatcom County failed to educate and train its deputy prosecuting

---

knowledge."); id. (stating that defendant Jones "asserts no personal knowledge" of plaintiff's alleged limited access to writing materials).

attorneys "in the values of honesty and integrity, and the lawful requirement that such deputies speak truthfully, and reveal all information which tends to show a man['s] innocence" First Am. Compl. at 28. He also alleges that Whatcom County failed to "erect and place methods and mechanisms" to oversee its deputy prosecuting attorneys and deputy sheriffs, id. at 30, and "search out and punish" violations of plaintiff's civil rights, id. at 31.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Social Servs. of New York, 436 U.S. 658, 694 (1978). "To impose liability against a county for its failure to act, a plaintiff must show: (1) that a county employee violated the plaintiff's constitutional rights; (2) that the county has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights." Long v. County of L.A., 442 F.3d 1178, 1186 (9th Cir. 2006) (citing Gibson v. County of Washoe, 290 F.3d 1175, 1193-94 (9th Cir. 2002)).

As indicated above, plaintiff has failed to present any factual evidence that defendants Buckingham, McEachran, or Jones violated his constitutional rights. More importantly, plaintiff has not provided any evidence whatsoever that Whatcom County has failed to train its employees to be truthful, oversee its employees, or punish its employees when they have violated a person's civil rights. Plaintiff believes that defendant Buckingham did not speak truthfully in his affidavit or before the court. Even if his allegations about defendant Buckingham are true, this alone does not establish that Whatcom County lacks any policy advising its employees on truthful statements or that it lacks mechanisms of oversight and discipline. That plaintiff was allegedly victimized by one or more individuals does not establish that those individuals have not been properly trained.

In his response brief, plaintiff asserts that Whatcom County "has engaged in a pattern of deliberate indifference to the civil rights of plaintiff, particularly his right to liberty, and that

these practices, although not 'official' policy, are condoned and have been so for many years." Dkt. #56 at 5. Plaintiff then lists a series of incidents, all of which involve his interactions with Whatcom County law enforcement. Plaintiff seems to believe that he has been targeted by Whatcom County law enforcement officials over the course of the last thirty years. See id. at 6 ("[T]he first episode of such disregard plaintiff recalls occurred about 1976."). But plaintiff provided no evidence that these individual incidents represent a concerted effort on behalf of county officials. In fact, just as the current case rests on plaintiff's bare allegations untethered to any factual support, so, too, are his claims of previous violations of Whatcom County officials. Therefore, plaintiff has failed to demonstrate that the county has a custom of deliberate indifference to any wrongs perpetrated against plaintiff.

Finally, plaintiff asserts that "he can show Whatcom County has long engaged in a pattern of such violations with many other persons. Plaintiff, personally, knows several other persons who have been imprisoned on baseless charges, later discharged, and sent away with no remedy." Id. at 13. But once again, plaintiff's conclusory allegations lack any factual support. Plaintiff's belief and statements that county officials have a practice of interfering with inmates' visiting hours, id. at 14, recording telephone conversations, id. at 15, and denying dental treatment to inmates, id. at 16, are not enough to survive summary judgment. See Taylor, 880 F.2d at 1045 ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

Therefore, plaintiff's § 1983 claim against Whatcom County is dismissed with prejudice.

## III. CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment (Dkt. #31) is GRANTED. Defendants Royce Buckingham, Wendy Jones, David McEachran and Whatcom County are dismissed with prejudice.

Plaintiff's motion for relief from judgment (Dkt. #113) is DENIED, as indicated in Part II.B.1 of this Order.

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 14

1  Plaintiff is hereby ORDERED TO SHOW CAUSE by October 16, 2009 why the unserved defendants should not be dismissed.

The October 5, 2009 trial date is hereby STRICKEN. The Court will issue a new case management order with a new dispositive motions deadline and trial date to resolve the claims against the remaining defendants.

DATED this 30th day of September, 2009.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 15